RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0154p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MICHIGAN SPINE AND BRAIN SURGEONS, PLLC,

*Plaintiff-Appellant,*

v.

No. 13-2430

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:12-cv-11329—Sean F. Cox, District Judge.

Argued: June 17, 2014

Decided and Filed: July 16, 2014

Before: KEITH, CLAY, and McKEAGUE, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Bryan L. Schefman, Bloomfield Hills, Michigan, for Appellant. James F. Hewson, HEWSON & VAN HELLEMONT, P.C., Oak Park, Michigan, for Appellee. **ON BRIEF:** Bryan L. Schefman, Bloomfield Hills, Michigan, for Appellant. James F. Hewson, Stacey L. Heinonen, HEWSON & VAN HELLEMONT, P.C., Oak Park, Michigan, for Appellee. April N. Ross, CROWELL & MORING LLP, Washington, D.C., for Amicus Curiae.

---

**OPINION**

---

McKEAGUE, Circuit Judge. This case presents the question of whether a health care provider can bring the Medicare Secondary Payer Act's private cause of action against a non-

1

group health plan that denies coverage for a reason besides Medicare eligibility.  We hold that it can.

**I.**

This action arises out of an October 26, 2010 automobile accident in which State Farm's insured, Jean Warner,[1] allegedly sustained injuries.  Following the accident, Michigan Spine provided approximately $26,000 of neurological treatment to Warner.  Michigan Spine submitted the claim to State Farm, but State Farm denied coverage, stating that Warner's medical condition was the result of a preexisting condition.  Thereafter, Michigan Spine submitted the claim to Medicare, which approved a conditional payment of approximately $5,000 pursuant to the Medicare Secondary Payer Act.

Michigan Spine brought suit against State Farm in state court, asserting a claim for direct payment of benefits under Michigan's No-Fault Act as well as a claim for damages under the Medicare Secondary Payer Act, which permits private causes of action against primary plans that fail to pay medical expenses for which they are responsible.  State Farm removed the action to federal court and filed a motion to dismiss and/or motion for partial summary judgment on the Medicare Secondary Payer Act claim.  The district court granted State Farm's motion,[2] holding that Michigan Spine's claim was foreclosed by *Bio-Medical Applications of Tennessee, Inc. v. Central States Southeast & Southwest Areas Health & Welfare Fund*, 656 F.3d 277, 285 (6th Cir. 2011), which stated that a private party can recover under the Medicare Secondary Payer Act only if a "primary plan" has failed to provide appropriate reimbursement "in accordance with paragraphs (1) and (2)(A)."  Because the *Bio-Medical* court stated that "[p]aragraph (1) prevents primary plans from limiting a planholder's benefits or coverage simply because the planholder is entitled to Medicare benefits," and State Farm did not deny coverage because of Warner's entitlement to Medicare benefits, the district court reasoned that Michigan Spine could not pursue a private cause of action against State Farm.  *Id.* at 286.  The district court then declined

---

[1]Warner is 53 years old, but became eligible for Medicare in 2000, when she was involved in an unrelated accident.

[2]The district court originally denied the motion, but later granted it on State Farm's motion for reconsideration.

to exercise supplemental jurisdiction over the state law claim and remanded the action to state court. This appeal followed.

## II.

Michigan Spine appeals the district court's grant of State Farm's motion to dismiss and/or motion for partial summary judgment on its Medicare Secondary Payer Act claim. This court reviews *de novo* a district court's grant of a motion to dismiss as well as a motion for summary judgment. *See, e.g.*, *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012); *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012). Dismissing a motion on the pleadings is appropriate when, even after taking all allegations of the non-moving party as true, "the moving party is nonetheless clearly entitled to judgment." *Wurzelbacher*, 675 F.3d at 583 (quoting *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Bruederle,* 687 F.3d at 776 (quoting Fed. R. Civ. P. 56(a)). Determining whether Michigan Spine's claim against State Farm may proceed requires statutory interpretation of the Medicare Secondary Payer Act, which involves questions of law also subject to *de novo* review. *See Ajan v. United States*, 731 F.3d 629, 631 (6th Cir. 2013) (internal quotation marks omitted).

## III.

"Medicare is a federal health insurance program that provides health insurance benefits to people 65 years of age or older, disabled people, and people with end-stage renal disease." *Stalley v. Methodist Healthcare*, 517 F.3d 911, 915 (6th Cir. 2008). Medicare served as the primary payer of health care costs for eligible individuals until 1980, when Congress, in an effort to counteract escalating healthcare costs, enacted the Medicare Secondary Payer Act. Under the Medicare Secondary Payer Act, in most situations where an individual is covered by both Medicare and another payer, Medicare serves as the secondary payer rather than the primary payer. Put differently, when payment is available from a primary plan, the primary plan and not Medicare is responsible for paying the costs of the individual's medical treatment. *See id.* When "a primary plan . . . has not made or cannot reasonably be expected to make payment with respect to such item or service promptly[,]" Medicare may conditionally pay for the cost of the

treatment.　42 U.S.C. § 1395y(b)(2)(B)(i); *see also Stalley*, 517 F.3d at 915.　In such cases, recouping the conditional payment, and ensuring that the responsible primary plan pays the provider of medical care, becomes necessary.

Providers of medical care can sue primary plans who fail to pay under the Medicare Secondary Payer Act's private cause of action provision—provided that the primary plan's failure to pay satisfies certain criteria outlined elsewhere in the Act.　When the private cause of action was added in 1986, the provision stated that a private cause of action was available when a primary payer failed to reimburse in accordance with "paragraph (1), (2), (3), *or* (4), respectively."　Pub. L. No. 99-509, § 9319(b), 100 Stat. 1874 (emphasis added).　In 1989, the provision was reorganized into its current form, and now reads as follows:

> (3) Enforcement
>
>> (A) Private cause of action
>>
>> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) *and* (2)(A).

42 U.S.C. § 1395y(b)(3)(A) (emphasis added).　Despite the change in conjunctive from "and" to "or" and the paragraphs being consolidated, the requirements regarding when conditional payment may be made have remained very similar.　*See Bio-Medical*, 656 F.3d at 298 (White, J., concurring).

Determining what is required so as to trigger the availability of the private cause of action—despite the Act's convoluted and "torturous" text, *see id.* at 279 (majority opinion)—is at the heart of this case.　State Farm's entire argument depends on Congress's use of the conjunctive "and," as State Farm insists that both paragraphs have to be met in all cases. Michigan Spine counters that the use of the conjunctive "and" is not instructive, and represents "simply the current, short-handed iteration of the original provision."　*Id.* at 298 (White, J., concurring).　Michigan Spine alleges that State Farm's interpretation is nonsensical because one of those paragraphs applies only to group health plans, a subset of primary plans, and so adopting State Farm's interpretation would render the private cause of action unenforceable against all

primary plans besides that subset—a result that does violence to the rest of the statutory scheme and runs afoul of congressional intent.

An analysis of these two paragraphs is in order. For this, the *Bio-Medical* court's discussion of the Act is instructive. Paragraph (1), "Requirements of group health plans," essentially lays out a system of rules instructing when group health plans must pay for medical items and services. *See* 42 U.S.C. § 1395y(b)(1). "The term 'group health plan' means a plan (including a self-insured plan) of, or contributed to by, an employer (including a self-employed person) or employee organization to provide health care (directly or otherwise) to the employees, former employees, the employer, others associated or formerly associated with the employer in a business relationship, or their families." 26 U.S.C.A. § 5000(b)(1). Group health plans are one subset of primary plans to which Medicare is a secondary payer under the Act. *See* 42 U.S.C. § 1395y(b)(2)(A) (noting that the term "primary plan" means group health plans, workmen's compensation plans, other insurance policies, and no-fault insurance). The first three subparagraphs of paragraph (1) prevent group health plans from "taking into account" that an individual is entitled to Medicare benefits due to "being (a) at least sixty-five years old, (b) disabled, or (c) diagnosed with end-stage renal disease." *Bio-Medical*, 656 F.3d at 285. Therefore, it is at least clear that a group health plan fails to reimburse in accordance with paragraph (1) when it takes into account an individual's entitlement to Medicare benefits, meaning that coverage is denied on the basis of Medicare eligibility. *See id.* at 285–86.

Paragraph (2), "Medicare secondary payer," instructs when Medicare may pay for medical items and services. As this court noted in *Bio-Medical*, it is odd that the Act conditions the private cause of action on a primary plan's failure to reimburse in accordance with subparagraph (2)(A) because "subparagraph [2](A) only addresses Medicare—not primary plans—as its subject." *Id.* at 285. Despite subparagraph (2)(A)'s only addressing Medicare, the *Bio-Medical* court construed the Act "collectively" so as not to render the private cause of action inoperative. *Id.* at 286; *see also United States v. Atl. Research Corp.*, 551 U.S. 128 (2007) (noting that statutes should not be interpreted so as to nullify entire provisions). Subparagraph (2)(A) provides that Medicare may not pay when a primary plan is expected to pay, "except as provided in subparagraph [2] (B)," which in turn provides that when the primary plan "cannot

reasonably be expected" to pay "promptly," Medicare may make conditional payments for those items or services—which is what happened here. *See* 42 U.S.C. § 1395y(b)(2)(B). Notably, in specifying when Medicare pays, subparagraph (2)(A) distinguishes between group health plans and non-group health plans, indicating that the requirements of paragraph (1) apply to group health plans but not to non-group health plans.[3] Therefore, pursuant to *Bio-Medical*, a primary plan fails to reimburse in accordance with subparagraph (2)(A) when it "causes Medicare to step in and (temporarily) foot the bill." *Bio-Medical*, 656 F.3d at 286. The *Bio-Medical* court summed up liability under the private cause of action as follows: "a *primary plan* is liable under the private cause of action when it [1] discriminates against planholders on the basis of their Medicare eligibility *and* [2] therefore causes Medicare to step in and (temporarily) foot the bill." *Id.* (emphasis added).

The parties disagree whether *Bio-Medical* is controlling. State Farm relies heavily on *Bio-Medical*'s language specifying when a "primary plan" is liable. *See id.* State Farm observes that it is a primary plan, as was Central States in *Bio-Medical*. State Farm reasons that because Central States denied coverage on the basis of Medicare eligibility and was found liable, State Farm is not liable because it denied coverage on the basis of a preexisting condition. Therefore, even though the actions of both Central States and State Farm caused Medicare to "step in" and make a conditional payment—i.e., meeting the requirement of subparagraph (2)(A)— State Farm cannot be liable here because it does not meet the Medicare-eligibility requirement of paragraph

---

[3]The statute reads in relevant part as follows:

(2) Medicare secondary payer
    (A) In general
        Payment under this subchapter may not be made, except as provided in subparagraph (B), with respect to any item or service to the extent that—
            (i) payment has been made, or can reasonably be expected to be made, with respect to the item or service as required under paragraph (1)[, "Requirements of group health plans,"] *or*
            (ii) payment has been made or can reasonably be expected to be made under [non-group health plans such as] a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance.

In this subsection, the term "primary plan" means a *group health plan or large group health plan, to the extent that clause (i) applies*, and *[a non-group health plans such as] a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies.*

42 U.S.C. § 1395y(b)(2)(A) (emphasis added).

(1).  As a result, State Farm argues, *Bio-Medical* compels dismissal of Michigan Spine's claim. Michigan Spine counters that, while Central States and State Farm are both primary plans, unlike Central States in *Bio-Medical*, State Farm, a no-fault insurer, is not a group health plan. Michigan Spine asserts that *Bio-Medical*'s holding as far as non-group health plans like State Farm are concerned is dicta and therefore not controlling.

The holding of a decision, which has precedential effect, is to be contrasted with *dicta*, which does not have precedential effect.  "*Obiter dictum*," "something said in passing" in Latin, is a "judicial comment while delivering a judicial opinion, but one that is unnecessary to the decision before the court and therefore not precedential."  Black's Law Dictionary (9th ed. 2009).  With this definition, the issue of whether *Bio-Medical* applies to non-group health plans comes into focus.  While it is true that *Bio-Medical* stated that *primary plans* rather than *group health plans* must meet the requirements of paragraphs (1) *and* (2)(A), this does not provide a basis to conclude that *Bio-Medical* was addressing the non-group health plan issue faced here. As a result, we find *Bio-Medical* distinguishable.  *See generally Rinard v. Luoma*, 440 F.3d 361, 363 (6th Cir. 2006) (observing that "questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents").

We therefore turn to the task of reconciling the provisions.  On the one hand, paragraph (1), "Requirements of group health plans," notes that *group health plans* may not take Medicare eligibility into account, and subparagraph (2)(A) indicates that only primary plans that are *group health plans* need abide by the group health plan requirements in paragraph (1).  On the other hand, subparagraph (3)(A), the private cause of action, seems to require that *all* primary plans— group and non-group health plans alike—abide by the group health plan requirements listed in paragraph (1).  In light of the inconsistency among the provisions, we do not find that the statutory text provides a clear answer as to whether paragraph (1), "Requirements of group health plans," and thus the Medicare-eligibility requirement, applies to non-group health plans.

When statutory text is unclear, courts afford deference to and seek guidance from agency regulations. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–45 (1984).  Michigan Spine cites numerous regulations promulgated by the Centers for Medicare

and Medicaid Services in support of its argument that the Act supports a private cause of action against non-group health plans. Most instructive are the regulations on what constitutes "taking into account" Medicare eligibility, the portion of paragraph (1) that Michigan Spine argues does not apply to non-group health plans. *See* 42 C.F.R. § 411.108. We observe that all eleven examples of what constitutes taking Medicare into account, as well as the examples of what does not constitute taking Medicare into account, are examples of action taken by group health plans. *See id.* § 411.108(a). Not one example indicates how a non-group health plan such as State Farm could satisfy the paragraph (1) requirement. *See id.* We believe the regulations lead to the conclusion that paragraph (1)'s requirement of taking Medicare eligibility into account concerns only group health plans and not non-group health plans, which means that Michigan Spine's claim against State Farm may proceed irrespective of the fact that State Farm denied coverage on a basis other than Medicare eligibility.

Our conclusion is further supported by considering congressional intent. *See Chevron*, 467 U.S. at 842–44. It is well-established that in passing the Medicare Secondary Payer Act and in providing for a private cause of action, Congress intended to "curb skyrocketing health costs and preserve the fiscal integrity of the Medicare system." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 363 (3d Cir. 2012); *see also Stalley*, 517 F.3d at 915 ("Congress enacted the [Act] to counteract escalating health-care costs."). Adopting State Farm's interpretation of the Medicare Secondary Payer Act would eviscerate the private cause of action as it relates to non-group health plans. We decline to reconcile the Act's provisions in such a manner, and in so doing note that other federal circuits have allowed claims under the Medicare Secondary Payer Act to proceed against non-group health plans without evidence that Medicare eligibility was involved in the benefit decision. *See Avandia*, 685 F.3d at 363; *Manning v. Utilities Mutual Insurance*, 254 F.3d 387 (2d Cir. 2001). We therefore hold that the Medicare-eligibility requirement in paragraph (1), "Requirements of group health plans," applies only to group health plans.

## IV.

Although the text of the Medicare Secondary Payer Act is unclear as to whether a private cause of action may proceed against a non-group health plan that denies coverage on a basis

other than Medicare eligibility, the accompanying regulations as well as congressional intent indicate that this requirement applies only to group health plans and not to non-group health plans. Therefore, Michigan Spine may pursue its claim under the Medicare Secondary Payer Act against State Farm. Accordingly, we **REVERSE** the judgment of the district court and **REMAND** for proceedings consistent with this opinion.